CHANDLER v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 3395.   Decided November 7, 1919.   (184 Pac. 1020.)

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION; ARISING OUT OF EMPLOYMENT INCLUDES DOG BITE.  Where an employé on his way from his residence to a garage to get his employer's automobile, used in making deliveries, was bitten by a dog while making delivery of meat for his employer, which was undelivered the evening before the injury arose "out of the employment" within Comp. Laws 1917, section 3122, allowing compensation for injuries by accident arising out of and in course of the employment.  (Page 216.)

2. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT MUST BE LIBERALLY CONSTRUED.  The rule that Employers' Liability Act, providing for compensation for injuries, should be liberally construed, which is also the rule prescribed by Comp. Laws

1917, section 5839, applies especially to the phrase "out of and in the course of the employment." (Page 217.)

3. MASTER AND SERVANT—WORKMEN'S COMPENSATION; DOUBT RE-SOLVED IN FAVOR OF CLAIMANT. Any doubt respecting right to compensation should be resolved in favor of the claimant. (Page 218.)

Appeal from District Court of Weber County, Second District; *A. W. Agee*, Judge.

Proceedings for compensation under the Employers' Liability Act by Emma Chandler opposed by A. M. Miller and the Ætna Life Insurance Company. Claimant's application was denied, and she commenced proceedings in the district court against the Industrial Commission, Miller, and the Insurance Company.

Judgment dismissing action, and claimant appeals.

REVERSED and REMANDED, with directions.

*Chez & Barker,* of Ogden, for appellant.

*De Vine, Stine & Gwilliams* and *J. D. Murphy,* all of Ogden, for respondents.

FRICK, J.

The plaintiff made application to the Industrial Commission of this state under the Employers' Liability Act of this state to recover compensation for the death of her husband, which occurred as hereinafter stated. The Industrial Commission denied her application for the reasons hereinafter appearing, and, pursuant to the provisions of the act aforesaid, she commenced this proceeding in the district court of Weber county.

In her complaint, after stating the necessary jurisdictional facts and matters of inducement, she alleged:

"That on the 26th day of January, 1918, at Ogden, Utah, one

George C. Chandler was engaged in the employ of A. M. Miller. That the said A. M. Miller was on said date conducting and operating a meat and grocery store in said city, doing business under the name and style of 'Washington Market.' That on said date, and at the said time and place, the said A. M. Miller, in the conduct and operation of said business, employed more than four persons, to wit, about forty persons, and had elected to become and was subject to the provisions of chapter 100 of the Laws of Utah of 1917, an act passed by the Legislature of the state of Utah on March 8, 1917, creating the Industrial Commission of Utah, and among other things establishing rates of compensation for personal injuries or death sustained by employés in the course of employment, and providing methods of insuring the payment of such compensation.

"That the duties of the said George C. Chandler required him to deliver meat and groceries in the city of Ogden, Utah, with and without an automobile, and that he was on the date and at the time and place herein mentioned furnished an automobile by his employer, the said A. M. Miller, for use in making such deliveries, which were made with an automobile, and that the hours of his said employment were from seven o'clock A. M. until 6 o'clock P. M.; that is to say, he was required to commence his said employment at seven o'clock A. M. and continue until 6 o'clock P. M. That the certain automobile which was furnished to him by his said employer for use in making such deliveries which were made with an automobile was kept in a garage at the rear of the residence of his said employer, A. M. Miller, at 764 Twenty-Fifth street, Ogden, Utah. That the place of business of the said A. M. Miller was situated at 2472 Washington avenue, Ogden, Utah. That the place of residence of said George C. Chandler was in the rear of Twenty-Seventh street between Jefferson and Adams avenues, Ogden, Utah. That in the course of his said employment the duties of the said George C. Chandler required him to go from his family residence each morning to said garage, and get said automobile, and drive it down to the said place of business of the said A. M. Miller, and to use it throughout the day in making such deliveries and to return it to the said garage at night after his day's work was finished. That when he was unable to make all the deliveries of the day he would bring with him to his home such undelivered packages and make deliveries of them the following morning on his way to his work.

"That on the morning of January 26, 1918, at about 7:20 o'clock, while the said George C. Chandler was on his way from his place of residence to the said garage to get said automobile and drive it down to his employer's said place of business to begin making the daily deliveries which he was required to make as herein-

before alleged, and while making delivery of meat for his employer which was undelivered the evening before, and without fault on his part, he was attacked and bitten in his hand by a dog known as the Jefferson Avenue dog. That after having his wound dressed he proceeded to his daily work, and worked steadily on each and every work day thereafter until on or about the 22d day of March, 1918, when he became violently sick, and was removed to a hospital, where he died on or about the 25th day of March, 1918, a violent death from hydrophobia, caused by the dog bite received on January 26, 1918, as hereinbefore alleged."

She also made the necessary allegations respecting the age, condition of health, etc., of the deceased and the dependency of herself and her three minor children, ranging in age from twelve to three years, etc., and prayed for judgment according to the provisions of the act.

The defendants demurred to the complaint upon several grounds. The only ground that is material here, however, is that the complaint does not state facts sufficient to constitute a cause of action. The district court sustained the demurrer upon that ground, and judgment dismissing the action was duly entered, from which the plaintiff appeals.

Plaintiff's counsel insist that the court erred in sustaining the demurrer. Our statute (Comp. Laws Utah 1917, section 3122) allows compensation to every employé coming within the provisions of the act who is "injured by accident arising out of and in the course of his employment." In view of the facts alleged in the complaint, all of which are admitted by the demurrer, the district court held that, while the deceased was injured by an accident occurring in the course of, yet he was not injured by an accident arising out of, his employment. Whether a particular injury is occasioned by an accident arising out of the employment may present a more or less perplexing question, and with respect to which reasonable men may well differ. Indeed, that is the difficult question in this case; and we fully appreciate the fact that the decisions of the courts are not unanimous upon that question. As is well said by Mr. Van Doren in referring to the Workmen's Compensation Act in his Workmen's Compensation, page 43:

"The extremely liberal construction of the courts (of the act)

has, as we have seen, made possible a recovery of compensation by the injured employé in a large proportion of the cases."

We are also reminded that our statute (Comp. Laws Utah 1917, section 5839) requires that the statutes of this state are to be "liberally construed with a view to effect the objects of the statutes and to promote justice."

Upon the question that the Employers' Liability Act should be liberally construed and so as to effectuate its purposes, all courts agree. *In re Ayers* (Ind. App.) 118    2 N. E. 386. That doctrine applies especially to the phrase "out of and in the course of the employment."

Notwithstanding the fact that the act must be given a liberal construction, the writer, nevertheless, entertains serious doubt whether, in view of the conceded facts in this case, the injury arose "out of the employment." In view, however, that my Associates are of the opinion that a liberal construction requires us to hold that the injury in this case arose out of, as well as in the course of, the employment, I cheerfully yield to their judgment. I do so with less reluctance or hesitation for the reason that such a holding is manifestly in furtherance of justice, and tends to effectuate the beneficent purposes of the Compensation Act. In this connection it must be remembered that the compensation provided for in the act is in no sense to be considered as damages for the injured employé or to his dependents in case death supervenes. The right to compensation arises out of the relation existing between employer and employé, and that the injury arises out of and in the course of the employment. Under such an act the costs and expenses of conducting the business or enterprise, including compensation for injuries to employés or other casualties, must be taxed to the business. The theory of the Compensation Act is that the whole cost and expense of conducting the business as aforesaid is added to the cost of the articles that are produced and sold, and hence, in the long run, such costs and expenses are borne by the public; that is, by the consumers of the articles produced. The purpose of such an act, therefore, is to protect the employé and those dependent upon him, and in case of his serious injury or

death to provide adequate means for the support of those dependent upon him. In view, therefore, that in case of total disability or death of the employé his dependents might become the objects of public charity, such a calamity is avoided by requiring the business or enterprise to provide for such dependents, with the right of the employer to add the amount that is paid out to the cost of producing and selling the product of such business or enterprise. The beneficent purposes of such acts are therefore apparent to all, and for that reason, if for no other, should receive a very liberal construction in favor of the injured employé. We are all united upon the proposition that in view of the purposes of such acts, in case there is any doubt respecting the right to compensation, such doubt should be resolved in favor of the employé or of his dependents as the case may be.

Counsel for the defendants Miller and the life insurance company have cited cases, however, wherein it is held that, where an employé has been injured from a cause or accident to which the public generally are exposed the same as the injured employé, the injury does not arise out of the employment. To that effect are the following among other cases cited by counsel: *In re Employers' Liability Assur. Corporation,* 215 Mass. 497, 102 N. E. 697; *Mann* v. *Glastonbury Knitting Co.,* 90 Conn. 116, 96 Atl. 368, L. R. A. 1916D, 86; *De Voe* v. *New York State Rys.,* 218 N. Y. 318, 113 N. E. 256, L. R. A. 1917A 250; *Newman* v. *Newman,* 169 App. Div. 745, 155 N. Y. Supp. 665.

In the case first cited, in referring to the test as to when it may be said that an accident or injury arises out of the employment, the court, in the course of the opinion, said:

"It (the injury) arises 'out of' the employment, when there is apparent to the rational mind, upon consideration of all of the circumstances a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, *if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment,* then it arises 'out of' the employment." (Italics mine.)

This, it seems to the writer, is too rigid a construction of the statute. Such a construction brings us right back to the old proposition that the employer would be liable upon the ground of negligence in a common-law action. If the injury or accident should "have been contemplated by a reasonable person," as is stated in the excerpt quoted from the opinion, then the employer should have foreseen it and protected the employé. If the employer contemplates or foresees an injury and does nothing to prevent it, he is necessarily guilty of negligence, and is thus liable to the injured employé unless the latter is guilty of contributory negligence which is the proximate cause of the injury. Such a construction, I think, is not sustained by the weight of authority.

Nor is the doctrine, that if the public, or a portion of it, is exposed to the same hazard as the employé, then he, for that reason, may not recover, followed by the more recent decisions. In the case of *Globe Indemnity Co.* v. *Industrial Accident Commission,* 36 Cal. App. 280, 171 Pac. 1088, cited by counsel for plaintiff, the court, in discussing that question in the course of the opinion, said:

"The petitioner contends that, because Roberts was exposed only to the ordinary perils of the street to which any other person on the street is exposed, he does not fall within the rule which awards compensation for an injury arising out of the employment of the injured man. When the logical result of the application of the rule for which petitioner is contending is considered, the justice of treating this case as one arising out of Roberts' employment is apparent. Consider the case of a messenger boy. He is in no greater peril on the street than any other person there. He carries perhaps his message in his pocket, leaving his arms disengaged and perfectly free to move about. But he is on the street constantly in the course of his employment. To hold that Roberts is not entitled to compensation would be to hold that this messenger boy would likewise not be entitled to compensation for an injury caused to him by the perils of the street. The illustration might be extended further to truck drivers, teamsters, and numerous other classes of employment whose followers use the streets in the regular course of their duty, and whose peril on the streets is no greater than that of any other person, but who would not be injured but for the fact that their duty takes and keeps them on the street. It does not seem to us that the Legislature

ever intended that these persons should be excluded from the benefit of industrial accident compensation."

To the same effect are *Industrial Com.* v. *Ætna Life Ins. Co.* (Colo.) 174 Pac. 589; *City of Milwaukee* v. *Allhoff*, 156 Wis. 68, 145 N. W. 238, L. R. A. 1916A, 327; *Baum* v. *Industrial Com.*, 288 Ill. 516, 123 N. E. 626.

Counsel for both sides have cited many other cases in support of their respective contentions, but the foregoing are sufficient to illustrate the principle upon which the courts proceed.

In view of the foregoing, it follows that the district court erred in holding that under the facts stated in plaintiff's complaint, which are conceded by the demurrer, she was not entitled to recover compensation under the Compensation Act. The judgment is therefore reversed, and the cause is remanded to the district court of Weber county, with directions to overrule the demurrer and to proceed to determine the cause in accordance with the views herein expressed. Plaintiff to recover costs on appeal.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.