## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Life Insurance Co. of Va. et al.

v.

Russell Wood

April 26, 1921

By JUDGE BEVERLEY T. CRUMP

In this matter the question presented is the liability of the employer and of the insurance carrier for compensation to the respondent here, Russell Wood, under the Workmen's Compensation law of Virginia, for an injury received by him while in the employment of the Insurance Company.

Russell Wood, a youth eighteen years of age, was in the employment of the Life Insurance Company of Virginia, at its Home Office building in the City of Richmond, engaged in the general duty of carrying messages within the building. The employees were allowed the hour from one to two o'clock P.M. to get their lunch, no provision being made for lunch on the premises, and they were permitted to get it at such place as they might elect.

On a day in October 1919, the claimant left the office to get his lunch, riding his bicycle as was his custom. He had lunch at a restaurant several blocks from the office. On his return, and while riding his bicycle he was accidentally struck by an automobile and injured.

These are briefly stated the material facts found by the [Industrial] Commission, which held that the claimant was entitled to compensation and made its award accordingly, whereupon an appeal was taken to this Court.

Under the Virginia statute the injury for which compensation may be awarded is "an injury by accident arising out of and in the course of the employment," being practi-

cally the same language occurring in similar statutes in other states.

The principles underlying the construction and application of modern industrial legislation of this character are now fairly well settled. It should be liberally construed by the Courts in order to enable it the more effectually to meet modern economic conditions.

In order that the claimant be entitled to compensation, the facts must show that (1) he was injured in the course of his employment, and (2) that the injury arose out of his employment. *Thomas v. Proctor & Gamble Co.,* 6 A.L.R. 1145 (Kans. 1919). 3 Va. Law Review, p. 232.

Many cases decided in England and in this country were brought to my attention by the exhaustive and able arguments submitted by counsel on both sides, and the record from the Industrial Commission contains a written opinion concurred in by the majority of the commission and a dissenting opinion by the third member, both opinions discussing the questions at issue with thoroughness and reviewing the authorities with discrimination.

Upon an examination of the pertinent cases bearing on the questions presented in this case I am unable to agree with the majority of the commission in the conclusion reached by them upon the law of the case.

Reviews of the decided cases generally may be found in the following: *Raynor v. Sligh Furniture Co.,* L.R.A. 1916A, 22 (this case has appended to it a note of 250 pages); *Zabriskie v. Erie R.R. Co.,* L.R.A. 1916A, p. 315; *Ex parte Sundine,* L.R.A. 1916A, p. 318; *Haller v. City of Lansing,* L.R.A. 1917E, 324; *Ind. Com'n v. Aetna Life Ins. Co.,* 3 L.R.A. 1336.

The English case of *Dennis v. White* decided by the House of Lords is reported in Ann. Cas. 1917E, 325.

The decisions of the Courts are by no means in harmony, and it may be said that the law relative to the construction of the Workmen's Compensation statutes is still in the making, so far as the Courts are concerned. It should also be borne in mind that in several of the states there are provisions in the statute, not found in others, which have a bearing upon the determination of the circumstances under which an accident can be said to have occurred in the course of employment and to have arisen out of the employment.

Our Virginia statute should be given application without reference to negligence on the part of the employer. Whether an act can be said to arise out of the employment should not be made to depend upon the likelihood of its occurrence ot its "foreseeableness" to use a phrase employed in recent cases discussing the doctrine of proximate cause in the law of negligence, nor do I think that the employee may not recover because he was injured by reason of a hazard to which the public generally is exposed. As to both of these matters I agree with the opinion of the Utah Court in the recent case of *Chandler v. Ind. Com'n* (Utah 1919), reported in 8 A.L.R. 930, in which it was held that one employed to deliver packages for his employer in the City of Ogden and who was bitten by a dog, while in the street for the purpose of delivering a package, was entitled to compensation.

Taking up the two questions upon which the right of the employee in the case here to compensate depends, I think the period which was allowed for lunch was covered by his employment, and so an injury sustained by him during that period may be said to have been sustained "in the course of the employment." The fact that injury occurs during the lunch hour or during any interim of temporary cessation of work in the course of the day does not of itself debar the employee from claiming compensation.

It seems to be well settled in the States in which the words "in the course of employment" are not modified by other provisions, that anything that occurs during the day's work, from the time of arrival to the time of leaving, may come within the purview of the statute.

It is, however, rather misleading to state that the lunch hour is an *incident* of the employment, as is stated in the course of some of the decisions, for the place may have no connection with the employment, and lunch is rather an incident of life generally.

In general an accident may be said to take place in the course of employment when the employee is doing what a man so employed may reasonably do within the time he is employed, and at a place he may reasonably be during the time.

Some of the cases give to the words "course of the employment" too comprehensive a scope, and allow it to include in a general way the circumstances under which

the accident took place. I think the meaning should be confined to the time and place, and a consideration of the circumstances should logically be referred to the ascertainment of the fact whether the accident arose out of the employment.

It may be said therefore that the claimant Wood was still "in the course of the employment" when returning from his lunch. It was natural for him to go out to get his lunch, it caused no break in his employment and he violated no terms of his employment by doing so.

But this is by no means determinative of his right to compensation. The proper way to state the proposition is, that the fact of his being upon the street during the lunch hour and being injured there does not preclude him from compensation, if the accident arose out of the employment.

Some of the earlier English and American cases seem to set up an arbitrary standard by which the right to recover is to be adjudged, dependent upon whether the employee was at the time of the accident on the premises or off the premises. In some of these cases the Courts were no doubt influenced by the language of the statute which they were construing, and which necessarily led to the adoption of such a stringent line of demarcation, on the one or the other side of which a case must fall.

No such arbitrary distinction can be adopted as a general principle, and it does not aid in the solution of every case. The fact that the employee was off the premises at the time may very well be one of the circumstances having a natural bearing in the ascertainment of how the accident arose, so as to determine whether it arose of the employment. I may seem to give too restricted an interpretation to the phrase "in the course of employment" but it being settled that its proper meaning is not to be limited to an actual performance of work, I think many of the Courts have been inclined to interpret or paraphrase it in too general terms. The difficulty in harmonizing the decisions may be realized upon a perusal of the note in L.R.A. 1916A, at p. 40, *et seq.*, and at p. 232, *et seq.* In one of the English cases there quoted (on p. 40) the Court says "The words 'out of and in the course of employment' are used conjunctively, and not disjunctively and upon ordinary principles of construction are not to

be read as meaning 'out of' that is to say 'in the course of.' The former words must mean something different from the latter words. The workman must satisfy both the one and the other." And again in the same case "The words 'out of' point I think to the origin or cause of the accident; the words 'in the course of' to the time place and circumstances under which the accident takes place. The former words are descriptive of the character or quality of the accident. The latter words relate to the circumstances under which an accident of that character or quality takes place. The character or quality of the accident, as conveyed by the words 'out of' involves I think, the idea that the accident is in some sense due to the employment. It must be an accident from a risk reasonably incident to the employment."

The foregoing gives a very ·fair statement of the meaning and effect generally attributed to the two terms in question in the English and adopted in many of the American cases. But it seems to me that the addition of the words "the circumstances under which an accident takes place" to the time and place of the accident gives too broad an interpretation to the words "in the course of." To the average mind the circumstances of an accident embrace all the available facts tending to show how it arose. I rather think that the time and place are themselves usually the circumstances which enable one to determine whether the accident arose in the course of the employment. To take this view seems to be the tendency of the New Jersey Court and of the Massachusetts Court in the *Zabriskie* Case and the *Sundine* Case in L.R.A. 1916A, *supra*, of the Kansas Court in *Thomas v. Proctor & Gamble, supra*, and of the Utah Court in the *Chandler* Case in 8 A.L.R., as I gather from their manner of discussion of the questions before them.

The Courts both English and American have not receded from the earlier English decisions tending to confine the course of employment to the time during which the employee is actually engaged at his work. That being so, it is a more liberal construction of the statute to consider only the time and place of an accident in determining whether the accident occurred in the course of employment, and to hold that this requirement of the statute is met if at the time the employee was at a place where he had

a right to be and the accident occurred at a time covered by the general terms of his employment, although it was during a period of temporary cessation of work. All the circumstances are then to be considered, including the time and place, in reaching a conclusion as to the liablility of the employer on the ground that the accident arose out of the employment. Such an application of the statute should facilitate the solution of the many problems which have arisen and are still to arise.

Conceding that the claimant here was still "in the course of his employment" while riding his bicycle on his return from his lunch, and therefore under the protection of the statute in case of injury to him from any cause having its origin in, or reasonably connected with, or incidental to, or in any way arising out of his employment, did the accident here so "arise out of his employment"?

This question must be answered in the negative both upon principle and authority. As a matter of authority the cases hold that any accident occurring on the premises during the day's period of employment, or while the employee is still on the premises going to or returning from work, or using any special way or structure to gain access to the place of work, though such way or structure is not under the control of the master, may be made the subject of compensation under the statute. When none of these incidents exist, all the circumstances under which the accident took place should be examined to see whether there is any fact connecting the accident with the employment. The fact that the immediate cause of the accident, as here the automobile striking the bicycle, was not in any way connected with the employment, is not of itself decisive. What then is the determining factor? For that under the circumstances presented here we must look to the character of the employment. Was the nature of the employment here such as to render a risk from such an accident as may occur to any one of the public upon the streets of the City, a risk incidental to the employment or otherwise?

In the *Chandler* Case above referred to, it was held that an injury by a dog bite, while one employed to deliver packages was making a delayed delivery in the morning, on his way from his home to the place where the vehicle

used by him was kept to procure it for his day's work, arose out of the employment; it being also held that in such a case the employee is not deprived of compensation because the public was exposed to a similar hazard as that from which the employee's injury arose.

It has also been held that the accident arose out of the employment when one employed as a driver of an express wagon was struck by an automobile while crossing the street from his truck to deliver an express package.

Likewise a messenger boy, who is required to be on the street constantly in the performance of his duties, is entitled to compensation when he receives an injury arising from an ordinary street hazard.

Other cases of a similar character may be found cited in *Thomas v. Proctor & Gamble*, and the annotation thereto, and in the *Chandler* Case and annotation in 6 A.L.R. and in 8 A.L.R.

The rationale of these cases is stated in the following sentence from the opinion in the *Chandler* case:

> The illustration might be extended further to truck drivers, teamsters and numerous classes of employment whose followers use the streets in the regular course of their duty, and whose peril on the streets is no greater than that of any other person, but who would not be injured but for the fact that their duty takes and keeps them on the street.

The test then is to be found in the class or character of the employment. It is manifest that in the instant case the occupation of the claimant was not such as to require him during the lunch hour or any other time to be exposed to the ordinary street hazards. Where he should take his lunch, whether in employer's building or elsewhere, on what street he should go, how he should travel, were not matters in any way incidental to or connected with the character of work for which he was employed.

I find the following quite recent cases along the same line: *Lumberman's Reciprocal Ass'n v. Behnken*, (Texas), 226 S.W. 154; *Johnson Coffee Co. v. McDonald*, (Tenn.) 226 S.W. 215; *Papineau v. I. A. Com.*, (Cal.) 187 P. 108; *White v. Slattery*, (Mass.) 127 N.E. 597.

In the *Papineau* Case it was held that a porter in a barber shop located on the second floor in an office building, who went out for milk to use with his lunch and was injured when entering the elevator, was entitled to compensation. In this case the same test applies, since the performance of his duty in the course of his employment *required him* to use the elevator. The Court says:

> That the elevators were for the use of all persons having occasion to use them as a means of access to the building could not affect claimant's right to the award. A like argument might be made with reference to injuries sustained by persons whose employment requires them to travel upon lines of railway, or upon public streets, right to recover for which is sustained by ample authority.

In *White v. Slattery* an employee injured upon an elevator in the employer's store, while going out during lunch hour to buy theatre tickets, was allowed compensation, the Court distinguishing the case from accidents occurring off the premises, at a time when the employee was on an errand not incidental to the nature of the employment.

In *Mueller Constr. Co. v. Ind. Board*, 283 Ill. 148 (1918), a foreman employed by a contractor in the remodeling of a building went across the street in order to telephone for materials and while in the street was struck by an automobile and injured. He was held to be entitled to compensation. He was on an errand immediately connected with the duties of his employment, and therefore the risks he encountered were incidental to the employment. In concluding its consideration of the question as to whether the accident arose out of the employment the Court says (on p. 159):

> While it is undoubtedly true that the danger or liability of injury could have been greater if the nature of the employment of defendant in error had required him to cross the street several times a day, such liability would be

one of degree only. If, as a part of his duties, he was required to cross the public street for the purpose of telephoning on the business of his employer and while so doing was struck by a passing vehicle, we are unable to see why, under the facts of this case, such an accident does not arise out of his employment as well as in the course of his employment. He was injured in performing a regular duty that was expected of him.

In the illuminative English case of *Dennis v. White* decided by the House of Lords in 1917, and reported in the Ann. Cas. 1917E, 325, the Lord Chancellor and several of the Justices all concurring delivered interesting and instructive opinions and the same doctrines in the main were announced as in the recent American cases I have referred to. In this case the claimant, a boy sixteen years of age, was employed as a plumber's mate by the respondents; in the course of his employment it was his duty to go upon errands to different parts of London, and on such occasions used a bicycle belonging to the firm; on the occasion of the accident he was ordered to go some distance to procure plaster, and in crossing one of the public squares his bicycle was struck by a motor car and he was injured. His claim to compensation was upheld. The Lord Chancellor says:

> If a servant in the course of his master's business has to pass along the public street, whether it be on foot or on a bicycle, or on an omnibus or car, and he sustains an accident by reason of the risks incidental to the streets, the accident arises out of as well as in the course of his employment. The frequency or infrequency of the occasions on which the risk is incurred has nothing to do with the question whether an accident resulting from that risk arose out of the employment. The use of the streets by the workman merely to get to or from his work of course stands on a different footing altogether, but as soon as it is established that the work itself involves exposure to the

perils of the streets the workman can recover for any injury so occasioned . . . . Where the risk is one shared by all men, whether in or out of employment, in order to show that the accident arose out of employment it must be established that special exposure to it is involved. But when a workman is sent into the street on his master's business, whether it be occasionally or habitually, his employment necessarily involves exposure to the risks of the streets and injury from such a cause arises out of his employment. There is nothing in the Act about any necessity for showing that the employment involves an extra special risk, and once it is clear, as it is in the present case, that the accident was the result of a risk necessarily incidental to the performance of the servant's work, all inquiry as to the frequency or magnitude of the risk is irrelevant. It is quite immaterial whether the nature of the employment involves continuous or only occasional exposure to the dangers of the streets. The frequency of the exposure to a risk increases the chance of the occurrence of an accident, but it has no bearing on the question whether it arose out of the employment, which is settled by the fact that such exposure was one of its terms whether on many occasions or one.

These recent cases English and American lay down fairly clear principles by which to determine whether an employee injured upon the street, by a risk common to all using the streets, is entitled to compensation. The chief fact to be ascertained, while stated in varying terms by the different judges, is whether the exposure to the risks of the streets was voluntary on the part of the servant or whether it was incidental to the performance of his work, or in any way connected with it so as to make his presence on the street a part of the duty required by him by reason of his employment. In the latter case an injury sustained on the street is compensable, otherwise it is not.

In the instant case, the fact that the accident occurred during the lunch hour while a leading feature is not especially material, except that in my view it may give rise to the inference that it occurred in the course of employment. On the other hand the clear inference from the facts found by the Commission is that the presence on the street of the claimant here at the time of the accident was in no way required of him, in no way connected with the performance of his work, nor with any duty connected with his work, and therefore cannot be said to have arisen out of his employment.

I am of opinion therefore to set aside the award of the Commission and to deny compensation to the claimant.